PERRY v KALAMAZOO STATE HOSPITAL

Docket No.- 59129. Argued December 9, 1977 (Calendar No. 15).—
Decided December 27, 1978. Rehearing denied 406 Mich 1118.

Leola Perry, administratrix of the estate of James H. Perry,
deceased, brought an action against Kalamazoo State Hospital
alleging negligence by a hospital attendant in restraining Mr.
Perry which resulted in his death while he was a patient at the
hospital under an order of the Kalamazoo County Probate
Court. The Court of Claims, James E. Hoff, J., granted acceler-
ated judgment for the defendant hospital on the ground of
governmental immunity and summary judgment for the hospi-
tal for failure to state a cause of action. The Court of Appeals,
Bronson, P.J., and Beasley and Anderson, JJ., affirmed in a
memorandum opinion (Docket No. 25281). Plaintiff appeals.
*Held:*

The operation of the mental hospital in this case was a
governmental function, and the hospital has governmental
immunity in its operation.

Justice Ryan, with Justices Williams and Coleman concur-
ring, wrote:

REFERENCES FOR POINTS IN HEADNOTES

[1-3, 4-8] 40 Am Jur 2d, Hospitals and Asylums §§ 20-24.
   72 Am Jur 2d, States, Territories, and Dependencies § 99 *et seq.*
   Immunity from liability for damages in tort of state or governmen-
      tal unit or agency in operating hospital. 25 ALR2d 203.
[4] 73 Am Jur 2d, Summary Judgment § 26 *et seq.*

fore, the operation of a public hospital was a "governmental function" at common law and consequently is a governmental function for purposes of the immunity statute. Defendant's operation as a state mental hospital is generally within the state's immunity because its operation is in the "exercise or discharge of a governmental function".

2. The care, treatment, and custody of patients at a public mental hospital are activities intended to promote the general public health and are exercised for "the common good of all". The plaintiff alleges that the defendant negligently breached its duty to provide for the care, treatment, and custody of its patient when a hospital attendant improperly restrained him. The restraint and control of certain patients in a mental ward is required at certain times in the exercise of the care, treatment, and custody of those patients. Consequently, the alleged negligence of the defendant is within the governmental function of operating a public mental hospital. The defendant is immune, therefore, from liability for its negligence, if any, in performing that function by reason of the immunity statute.

Summary judgment for the defendant for failure to state a claim upon which relief can be granted was proper.

Justice Moody concurred with Justice Ryan that the activities conducted by Kalamazoo State Hospital are governmental functions and, therefore, are immune from governmental liability. Government plays a pervasive role in the area of mental health. The state's annual budget includes a substantial appropriation in this field. The Legislature has declared as public policy "that services for the care, treatment, or rehabilitation of those who are seriously mentally handicapped shall always be fostered and supported" and has mandated the courts to provide for proper civil and criminal disposition of persons who have serious mental diseases. The number of private mental hospitals available is clearly inadequate to deal with the substantial institutional needs of the public. The day-to-day care by an attendant, physician, or other employee on the staff of a mental hospital is a governmental function furthering the public need to segregate, treat, and rehabilitate citizens suffering from mental disease who cannot otherwise care for themselves and who are often committed voluntarily or involuntarily through governmental action. Public mental hospitals perform an essentially unique activity mandated by legislative action, and immunity must be extended to their function. The proper planning and carrying out of this function can effectively be accomplished only by the government. The function is essentially governmental. The Legislature has left the interpre-

tation of "governmental function" to the courts, which must come to grips with the issue on a case-by-case basis.

Affirmed.

Chief Justice Kavanagh, with Justices Levin and Fitzgerald concurring, would reverse the decision of the Court of Appeals.

The term "governmental function" should be limited to those activities *sui generis* governmental—of essence to governing. Even though an activity is not proprietary, it does not necessarily follow that the activity is governmental. Although it may be an appropriate goal or objective of government to establish a mental hospital, it does not follow that the daily operations of the hospital constitute a governmental function. Because the operation of a mental hospital is not an activity of such a peculiar nature that it can only be done by government it is not a "governmental function" and there is no statutory immunity from tort liability.

## OPINION OF THE COURT

1. STATES — TORTS — GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION — STATUTES — COMMON LAW.

The Legislature, by employing a common-law term of art, "governmental function", in creating statutory immunity from tort liability, appears to have directed the courts to look to the common law for guidance in determining whether, in a given case, a governmental agency is exercising or discharging a "governmental function" for purposes of the governmental tort liability statute (MCL 691.1407; MSA 3.996[107]).

2. STATES — HOSPITALS — MENTAL HEALTH — TORTS — GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION — WORDS AND PHRASES.

Case law before the adoption of the governmental tort liability act held that the operation of a public hospital to promote the public health is a "governmental function", and, furthermore the operation of a public hospital is within the "common good of all" definition of a "governmental function"; therefore the operation of a public mental hospital is generally within the state's immunity for purposes of the governmental tort liability act (MCL 691.1407; MSA 3.996[107]).

3. STATES — HOSPITALS — MENTAL HEALTH — TORTS — GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION — WORDS AND PHRASES.

Care, treatment, and custody of patients at a public mental hospital are activities intended to promote the general public

health and are exercised for the common good of all, and the restraint and control of certain patients in a mental ward is required at certain times in the exercise of the care, treatment, and custody of those patients; consequently alleged negligence of a state mental hospital attendant in restraining a patient is within the state's governmental function of operating the hospital and the state is immune from liability for its negligence, if any, by reason of the provisions of the governmental tort liability act (MCL 691.1407; MSA 3.996[107]).

4. JUDGMENT — SUMMARY JUDGMENT — STATES — TORTS — GOVERNMENTAL IMMUNITY.

Summary judgment for a defendant state agency for failure to state a claim upon which relief can be granted was proper in a case where the defendant state agency was immune from liability because its alleged negligence was in the performance of a governmental function (GCR 1963, 117.2[1]).

CONCURRING OPINION BY BLAIR MOODY, JR., J.

5. STATES — HOSPITALS — MENTAL HEALTH — TORTS — GOVERNMENTAL IMMUNITY — WORDS AND PHRASES.

*Public mental hospitals perform an essentially unique activity mandated by legislative action; governmental immunity for tort liability must be extended to the day-to-day care public mental hospitals provide as a governmental function because the proper planning and carrying out of this function can effectively be accomplished only by the government (MCL 691.1407; MSA 3.996[107]).*

6. STATES — TORTS — GOVERNMENTAL FUNCTION — COMMON LAW.

*The Legislature has left the interpretation of "governmental function" to the courts, which have the responsibility to come to grips with the issue on a case-by-case basis (MCL 691.1407; MSA 3.996[107]).*

DISSENTING OPINION BY KAVANAGH, C.J.

7. STATES — TORTS — GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION.

*The term "governmental function" under the governmental tort liability act should be limited to those activities* sui generis *governmental—of essence to governing; an activity is not necessarily governmental even though it is not proprietary (MCL 691.1407; MSA 3.996[107]).*

8. STATES — HOSPITAL — MENTAL HEALTH — TORTS — GOVERNMEN-
    TAL IMMUNITY — GOVERNMENTAL FUNCTION — WORDS AND
    PHRASES.

>  The day-to-day operation of a mental hospital is not a "govern-
>  mental function" within the meaning of the governmental tort
>  liability act; the modern hospital is essentially a business and
>  the operation of a mental hospital is not an activity of a
>  peculiar nature such that it can only be done by government
>  (MCL 691.1407; MSA 3.996[107]).

*Fieger, Golden & Cousens* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Norbert C. Jaworski* and *Jann Ryan Baugh,* Assistants Attorney General, for defendant.

RYAN, J. We are asked in this case to decide whether the operation of the Kalamazoo State Hospital constitutes the exercise or discharge of a governmental function for purposes of the statutory grant of immunity to the state from tort liability found in MCL 691.1407; MSA 3.996(107). We hold that it does and affirm the trial court's grant of defendant's motion for summary judgment.

I

James Herschel Perry was a resident of Kalamazoo State Hospital on November 14, 1972. On that day, a hospital attendant, in the course of performing his routine duties, found it necessary to restrain Mr. Perry. In so doing, the attendant rendered Mr. Perry unconscious. The attendant then laid Mr. Perry on his back which caused the aspiration of his stomach contents and resulted in his death.

Plaintiff, administratrix of the estate of James Herschel Perry, filed a complaint in the Court of

Claims alleging that defendant breached its duty to provide for the care, treatment and custody of Mr. Perry.[1]

Defendant moved for summary judgment on the basis that it was immune from liability under the governmental immunity statute, MCL 691.1407; MSA 3.996(107).

Following argument, the trial court granted defendant's motion for summary judgment. The Court of Appeals affirmed in a memorandum opinion.

We granted leave to appeal. 399 Mich 894 (1977). We affirm.

## II

The governmental immunity statute provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed." MCL 691.1407; MSA 3.996(107).

The historical context in which this statute was

---

[1] Plaintiff's amended complaint sets forth the following allegations:

"5. That defendant hospital has a duty to provide for the care, treatment and custody of its patients.

"6. That defendant hospital breached its duty in that on or about the evening of November 14, 1972, an employee of defendant hospital caused the death of James Herschel Perry by applying such force to the deceased's neck as to produce unconsciousness. Further, this force caused aspiration of the stomach contents and hemorrhages in the bronchial alveoli area thereby causing the death of James Herschel Perry."

enacted suggests that the Legislature's intent in adopting this act was to codify the existing common-law or judge-made immunity of the state. *Thomas v Dep't of State Highways,* 398 Mich 1, 10; 247 NW2d 530 (1976).

The phrase "governmental function" was a term of art at common law. It was used to both describe the nature and define the limits of the state's immunity from tort liability. By utilizing that same term of art in creating statutory immunity, the Legislature has directed the courts to look to the common law for guidance when faced with determining whether the state may invoke the protection of the statute in any given case.

A review of the case law of governmental immunity that existed prior to the legislative affirmation of the state's immunity provides guidance to this Court in two respects. First, the factual questions resolved in those decisions provide concrete examples of the specific activities contemplated by the Legislature when employing the term "governmental function". Second, that case law provides a definition of the term "governmental function".[2]

Reference to the pre-statutory immunity cases reveals that this Court has held that the operation of a public hospital to promote the general public health is a governmental function. *Martinson v Alpena,* 328 Mich 595; 44 NW2d 148 (1950).

Furthermore, the operation of a public hospital

---

[2] In *Thomas v Dep't of State Highways,* 398 Mich 1; 247 NW2d 530 (1976), we recognized because past precedent is less than clear in many areas, we are effectively forced to decide on a case-by-case basis which activities may be classified as a governmental function and thus entitled to immunity. We invited the Legislature to relieve the uncertainty and potential for confusion in this area by enacting more specific guidelines. However, to this date the Legislature has not chosen to respond.

comes clearly within the frequently cited "common good of all" definition of governmental function.[3]

This leads to the conclusion, therefore, that the operation of a public hospital was a "governmental function" at common law in Michigan and consequently is a governmental function for purposes of the immunity statute. Defendant's operation as a state mental hospital is generally within the statute's immunity because its operation is in the "exercise or discharge of a governmental function".[4]

## III

The remaining question in our analysis is whether plaintiff has alleged tortious activity by defendant which falls within the scope of its immunity.

Plaintiff's complaint alleges that defendant negligently breached its duty to provide for the care, treatment and custody of its patient, Mr. Perry.

---

[3] " 'The underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability, if it is not, there may be liability. That it may be undertaken voluntarily and not under compulsion of statute is not of consequence.' " *Gunther v Cheboygan County Road Commissioners,* 225 Mich 619, 621; 196 NW 386 (1923), citing *Bolster v City of Lawrence,* 225 Mass 387; 114 NE 722 (1917).

[4] This conclusion gains further support in this case from Const 1963, art 4, § 51, which provides:

"The public health and general welfare of the people of the state are hereby declared to be matters of primary public concern. The legislature shall pass suitable laws for the protection and promotion of the public health.",

and from Const 1963, art 8, § 8, which provides:

"Institutions, programs and services for the care, treatment, education or rehabilitation of those inhabitants who are physically, mentally or otherwise seriously handicapped shall always be fostered and supported."

The State Department of Mental Health controls and operates the Kalamazoo State Hospital pursuant to a statute enacted to effectuate these constitutional declarations of public policy. MCL 330.1116; MSA 14.800(116).

The facts as pled and explained in oral argument allege that this breach occurred when a hospital attendant improperly restrained Mr. Perry.

The care, treatment and custody of mental patients at a public hospital are activities intended to promote the general public health and are exercised for "the common good of all". The restraint and control of certain patients in a mental ward is required at certain times in the exercise of the care, treatment and custody of those patients. Consequently, the alleged tortious activity of defendant is within the governmental function of operating a public mental hospital. The defendant is immune from liability for its negligence, if any, in performing that function, by reason of MCL 691.1407; MSA 3.996(107).

The trial court was correct in dismissing the action. GCR 1963, 117.2(1).

Affirmed. No costs, a public question being involved.

WILLIAMS and COLEMAN, JJ., concurred with RYAN, J.

BLAIR MOODY, JR., J. *(concurring).* I concur with Justice RYAN that the activities conducted by the Kalamazoo State Hospital, a public mental hospital, are governmental functions and, therefore, are immune from tort liability. The opposite conclusion was reached relative to general hospitals in *Parker v Highland Park, ante,* 404 Mich 183; 273 NW2d 413 (1978), also decided today. Accordingly, it may be gleaned that my rationale for retaining immunity in this case differs from my colleagues but is consistent with *Parker.*

Government plays a pervasive role in the area of mental health. This state's annual budget includes a substantial appropriation in this field. See, *e.g.,*

1978 PA 407. Our Legislature has declared as public policy, "that services for the care, treatment, or rehabilitation of those who are seriously mentally handicapped shall always be fostered and supported". MCL 330.1116; MSA 14.800(116). See also Const 1963, art 8, § 8.

Furthermore, to advance this public policy the Legislature has mandated the courts to provide for proper civil and criminal disposition of persons who have serious mental disease. See MCL 330.1400 et seq.; MSA 14.800(400) et seq.; MCL 330.2050; MSA 14.800(1050). Access to public mental hospitals is essential to effectively process probate and circuit court commitment proceedings. Clearly, the number of private mental hospitals available to the judiciary to deal with the substantial institutional needs of the public is inadequate.

The day-to-day care by an attendant, physician or other employee on the staff of a mental hospital represents a governmental function furthering the public need to segregate, treat and rehabilitate citizens suffering from mental disease who cannot otherwise care for themselves and who often are committed voluntarily or involuntarily through governmental action.

Accordingly, as public mental hospitals perform an essentially unique activity mandated by legislative action, immunity must be extended as a governmental function under the statute. The proper planning and carrying out of this function can effectively be accomplished only by the government. The function is essentially governmental.

It is recognized that an analytical demarcation between general and mental hospitals is far from perfect in this imperfect world. However, the rationale is an attempt to evolve a just application of the term governmental function within the confines of the present statute.

The Legislature has left the interpretation of governmental function to the courts. Of necessity, until this term is definitively refined, it is our responsibility to come to grips with the issue on a case-by-case basis.

The Court of Appeals decision is affirmed.

KAVANAGH, C.J. *(for reversal).* The issue here is whether the operation of a state mental hospital is a "governmental function", rendering the state immune from tort liability under MCL 691.1407; MSA 3.996(107). For the reasons stated by Justice FITZGERALD in *Parker v Highland Park, ante,* 404 Mich 183; 273 NW2d 413 (1978), we hold that it is not.

The statute provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed." MCL 691.1407; MSA 3.996(107).

In order to constitute a "governmental function" under the statute, the activity must be *"sui generis* governmental—of essence to governing". *Parker,* 193. Because the operation of a mental hospital is not an activity which can be done only by the government, it is not a "governmental function" and there is no statutory immunity from tort liability.

LEVIN and FITZGERALD, JJ., concurred with KAVANAGH, C.J.