HOLZER v OAKLAND UNIVERSITY

Docket No. 51642. Submitted May 8, 1981, at Lansing.—Decided October 19, 1981. Leave to appeal applied for.

Heidi Holzer brought an action against Oakland University and James Tompkins for damages resulting from injuries which she received while a student during a class at the university conducted by James Tompkins. The university moved for summary judgment on the ground that it was performing a governmental function and thus was immune from tort liability, which motion was granted, Oakland Circuit Court, Richard D. Kuhn, J. The plaintiff appeals. *Held:*

The trial court properly granted the university's motion. The operation of a state university is a function *sui generis* to government and thus immune from tort liability.

Affirmed.

M. F. CAVANAGH, J., dissented. He would hold that the hiring and assignment of university faculty and the supervision of university faculty and students are not governmental functions immune from tort liability. Nor would he hold that holding public universities liable for the negligent activities of their personnel is an unacceptable interference with government's ability to govern. He would reverse.

OPINION OF THE COURT

1. GOVERNMENTAL IMMUNITY — UNIVERSITIES — TORTS — STATUTES.

The operation of a state university is a function *sui generis* to government and thus is immune from tort liability (MCL 691.1407; MSA 3.996[107]).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 14, 38.

Modern status of doctrine of sovereign immunity as applied to public schools and institutions of higher learning. 33 ALR3d 703.

Tort liability of public schools and institutions of higher learning. 86 ALR2d 489.

DISSENT BY M. F. CAVANAGH, J.

2. GOVERNMENTAL IMMUNITY — UNIVERSITIES — TORTS.

The *hiring and assignment of university faculty and the supervision of university faculty and students are not functions* sui generis *to government and thus public universities are not immune from liability for torts resulting therefrom; such liability does not amount to an unacceptable interference with government's ability to govern.*

*Pianin, Graber & Paull, P.C.,* and *Gromek, Bendure & Thomas* (by *Nancy L. Bosh),* for plaintiff.

*Buchanan, Ogne & Jinks, P.C.* (by *Dennis D. Alberts* and *Stephen T. Moffett),* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and M. F. CAVANAGH and BEASLEY, JJ.

PER CURIAM. On April 1, 1974, plaintiff, Heidi Holzer, was injured while attempting to perform an exercise in a "movement" class in which she was enrolled as a student at the Oakland University Academy of Dramatic Arts. She commenced a negligence action on January 18, 1977. On March 20, 1980, the trial judge issued an opinion providing for the granting of a motion for summary judgment, under GCR 1963, 117.2(1), made by defendant, Oakland University, on the basis of governmental immunity.[1] An order to that effect was entered on April 28, 1980. Plaintiff appeals as of right.

Plaintiff contends that the trial court erred in holding that the operation of a university is a governmental function entitled to governmental immunity from tort liability under MCL 691.1407; MSA 3.996(107). This statute provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in

[1] MCL 691.1407; MSA 3.996(107).

all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

The Supreme Court is split on the interpretation of the statutory term "governmental function". In *Parker v City of Highland Park,*[2] Justices FITZGERALD, KAVANAGH, and LEVIN stated that they "would limit the term 'governmental function' to those activities *sui generis* governmental—of essence to governing".[3] Applying this test in *Parker,* they concluded that the daily operations of a public hospital are not a governmental function entitled to governmental immunity. They reasoned:

"The operation of a hospital is not an activity of a peculiar nature such that the activity can only be done by government. Rather, government participates alongside private enterprise, charitable and religious organizations in operating hospitals." (Footnote omitted.)[4]

In *Perry v Kalamazoo State Hospital,*[5] a case decided the same day as *Parker,* Justices RYAN, WILLIAMS, and COLEMAN would look to the common law for guidance in interpreting the term "governmental function", using both specific examples of activities held to be governmental functions and the common-law definition of "governmental function" as activities undertaken for "the common good of all".

Based on this common-law analysis, these three

[2] 404 Mich 183; 273 NW2d 413 (1978).

[3] *Parker, supra,* 193.

[4] *Parker, supra,* 194.

[5] 404 Mich 205; 273 NW2d 421 (1978).

justices concluded in *Perry* that the operation of a public mental hospital was a governmental function entitled to governmental immunity.

Justice MOODY acted as the swing vote in *Parker* and *Perry.* In *Parker,* he found that the operation of a general hospital by a municipality is not a governmental function for immunity purposes. He reasoned:

"To delineate a complete and balanced definition of governmental function within a simplistic format would be presumptuous. However, as a basic guideline, the crux of the governmental essence test should be founded upon the inquiry whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government. Unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune.

\* \* \*

"The day-to-day care afforded to the substantial majority of patients in general hospitals is not of a unique character or precipitated by governmental mandate. Activities conducted by the staff or general hospitals are not such as can effectively be accomplished only through government participation. The medical practice performed in the emergency room of a municipal general hospital falls outside the scope of a governmental function contemplated by the statute. See *Lykins v Peoples Community Hospital,* 355 F Supp 52 (ED Mich, 1973)." (Citation omitted.)[6]

In *Perry,* Justice MOODY reached the opposite conclusion, finding that the operation of a state mental hospital was a governmental function for immunity purposes. He reasoned:

---

[6] *Parker, supra,* 200-202.

"The day-to-day care by an attendant, physician or
other employee on the staff of a mental hospital repre-
sents a governmental function furthering the public
need to segregate, treat and rehabilitate citizens suffer-
ing from mental disease who cannot otherwise care for
themselves and who often are committed voluntarily or
involuntarily through governmental action.

"Accordingly, as public mental hospitals perform an
essentially unique activity mandated by legislative ac-
tion, immunity must be extended as a governmental
function under the statute. The proper planning and
carrying out of this function can effectively be accom-
plished only by the government. The function is essen-
tially governmental.

"It is recognized that an analytical demarcation be-
tween general and mental hospitals is far from perfect
in this imperfect world. However, the rationale is an
attempt to evolve a just application of the term govern-
mental function within the confines of the present
statute.

"The Legislature has left the interpretation of gov-
ernmental function to the courts. Of necessity, until
this term is definitively refined, it is our responsibility
to come to grips with the issue on a case-by-case basis."[7]

We believe that Chief Justice COLEMAN and
Justices RYAN and WILLIAMS would find that the
operation of Oakland University was a common-
law governmental function undertaken for "the
common good of all" and, therefore, that the uni-
versity was immune from tort liability.

We believe that Justices LEVIN, FITZGERALD, and
KAVANAGH, on the other hand, would find no
immunity because the operation of a university is
not an activity of a peculiar nature such that can
be done only by the government and, therefore, is
not a governmental function.

Confronted with what, to this point, would most
likely be an evenly split court, we must decide how

---

[7] *Perry, supra,* 214-215.

Justice Moody would apply his own expanded version of the "governmental essence" test, inquiring whether "the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government".[8] We believe that Justice Moody, after applying this test, would decide that the operation of a state university is a governmental function immune from tort liability.

In reaching this conclusion, we note that the state constitution expresses a strong public policy of encouraging the means of education.[9] Furthermore, the constitution expressly mandates that the Legislature appropriate monies to maintain institutes of higher education.[10]

Extensive legislation has been passed providing for the establishment and administration of state colleges and universities and for the establishment of programs to enable students to attend colleges and universities through means of scholarships, loans, tuition grants, and tuition waivers.[11]

While there are many nonpublic colleges in the state, the providing of opportunities for higher education to a significant percentage of the population is an activity which "can be effectively accomplished only by the government".[12] As Justice Moody said of mental health in *Perry*, "Government plays a pervasive role in the area * * *."[13]

---

[8] *Parker, supra,* 200.

[9] Const 1963, art 8, § 1.

[10] Const 1963, art 8, § 4.

[11] MCL 390.1 *et seq.;* MSA 15.901 *et seq.*

[12] $638,713,100 was appropriated for higher education for the fiscal year ending September 20, 1981. Of this sum, $44,804,600 was allocated for grants and financial aid and $593,908,500 was allocated for state colleges and universities. In allocating the latter amount, the Legislature noted that: "The 15 baccalaureate institutions serve 237,000 students and provide more than 6,000 degree programs of undergraduate and graduate education." 1980 PA 332.

[13] *Perry, supra,* 213.

The trial court properly granted defendant Oakland University's motion for summary judgment based on governmental immunity.

Affirmed.


M. F. CAVANAGH, J. *(dissenting)*. I am in agreement with the majority's recitation of the facts and the current state of the law as to governmental immunity. I disagree with their prognostication of how Justice MOODY would treat this factual situation.

I would hold that the hiring and assignment of university faculty and the supervision of university faculty and students are not governmental functions for purposes of the immunity statute. Although the state has a significant financial involvement in higher education, university education is not an activity which "can be effectively accomplished only by the government". *Parker v City of Highland Park,* 404 Mich 183, 200; 273 NW2d 413 (1978). Education at public universities is neither free nor universal, as is true of public education at the elementary and secondary levels.

Of significance to me also would be the fact that the government plays virtually no role in placing students in public universities. The decision to seek admission at a particular public university is essentially a matter of individual choice and depends in large part on the programs offered at the university as well as the academic qualifications of the individual seeking admission. I am persuaded that this situation would be contrasted by Justice MOODY with public mental hospitals where patients are committed to an institution, often by court order, to fulfil the clear governmental responsibility of caring for those who cannot care for

themselves or who present a danger to society. *Id.,* 201.

Finally, I do not deem holding public universities liable for the negligent activities of their personnel to be "an unacceptable interference with government's ability to govern". *Id.,* 200, 202. Accordingly, I would reverse the lower court's grant of summary judgment to defendant-appellee.