BROSNAN v LIVONIA PUBLIC SCHOOLS

Docket Nos. 60170, 61739. Submitted December 9, 1982, at Detroit.—
Decided February 23, 1983.

Bridget Brosnan and Maurice Brosnan, individually, and Bridget
Brosnan, as next friend of Maureen Brosnan, their minor
daughter, brought an action in the Wayne Circuit Court
against the Livonia Public Schools, Livonia Board of Education,
Ken Thompson, a speech therapist for the board of education,
Venna Johnson, the principal of Maureen's school, and Charles
Ruckhaber, the school's psychologist, seeking damages resulting
from an alleged misdiagnosis of Maureen's language impair-
ment. The trial court, Lucile A. Watts, J., granted a motion for
summary judgment filed by the Livonia Public Schools and the
Livonia Board of Education, holding that they were immune
from tort liability pursuant to the doctrine of governmental
immunity. Plaintiffs appeal as of right from the order of
dismissal entered to that effect in docket number 60170. A
motion for summary judgment based upon a claim of govern-
mental immunity was also brought by the remaining individual
defendants. The trial court, Richard C. Kaufman, J., denied the
motion. The individual defendants appeal, by leave granted,
from the order to that effect in docket number 61739. The two
appeals were subsequently consolidated. *Held:*

1. The Court of Appeals looks to the precise activity giving
rise to the plaintiff's claim (here, the misdiagnosis of a lan-
guage impairment and negligent administration of speech ther-
apy) rather than the overall or principal department operations
(here, the operation of an elementary school) in determining
whether a particular governmental activity is a governmental
function.

2. A public school district's administration and supervision of

REFERENCES FOR POINTS IN HEADNOTES
[1] 61A Am Jur 2d, Pleading § 230 *et seq.*
[2, 3] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 38
*et seq.*
[4] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 27 *et
seq.*
[5-8] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 31.

a speech therapy program is a governmental function, therefore, the trial court was correct in granting the motion for summary judgment brought by the Livonia Board of Education and the Livonia Public Schools.

3. The trial court erred in denying the individual defendants' motion for summary judgment. The individual defendants were entitled to the defense of governmental immunity under either of the two approaches employed by the Court of Appeals to determine whether public employees are protected by governmental immunity. They were acting within the scope of their employment and were performing discretionary acts.

Affirmed in part, reversed in part, and remanded.

1. MOTIONS AND ORDERS — SUMMARY JUDGMENT — FAILURE TO STATE CLAIM — SUFFICIENCY OF PLEADINGS — COURT RULES.

A motion for summary judgment on the ground that a party failed to state a claim upon which relief can be granted challenges the legal sufficiency of the pleadings alone and is to be tested by whether, accepting all well-pleaded facts as true, the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery (GCR 1963, 117.2[1]).

2. GOVERNMENTAL IMMUNITY — PUBLIC SCHOOLS — GOVERNMENTAL FUNCTIONS.

The operation of a public school is a governmental function.

3. GOVERNMENTAL IMMUNITY — PUBLIC SCHOOLS — SPEECH THERAPY PROGRAMS — GOVERNMENTAL FUNCTIONS.

A public school district's administration and supervision of a speech therapy program for its students is a governmental function entitled to immunity from tort liability (MCL 691.1407; MSA 3.996[107]).

4. GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTIONS.

The Court of Appeals looks to the precise activity giving rise to the plaintiff's claim rather than the overall or principal department operations in determining whether a particular governmental activity is a governmental function.

5. SCHOOLS — SPEECH THERAPY PROGRAMS — PUBLIC HEALTH.

The examination, diagnosis, and treatment of speech handicaps of students at a public elementary school are activities intended to promote the general public health and are exercised for the common good of all.

6. SCHOOLS — SPECIAL EDUCATION — HANDICAPPED PERSONS.

A public school district must provide special education programs and services for handicapped persons in its district; such handicaps include mental, physical, emotional, behavioral, sensory, and speech handicaps (MCL 380.4, 380.1751; MSA 15.4004, 15.41751).

7. CONSTITUTIONAL LAW — PUBLIC POLICY — SERVICES FOR HANDICAPPED.

Michigan's public policy is in favor of services for handicapped persons (Const 1963, art 8, § 8).

8. SCHOOLS — PUBLIC EDUCATION — PRIVATE SCHOOLS.

The government plays a pervasive role in the area of public education; the number of private schools available to deal with the educational needs of the public is inadequate.

*Charfoos, Christensen, Gilbert & Archer, P.C.* (by *John A. Obee* and *Gary D. Siegel),* for plaintiffs.

*Ogne, Jinks, Ecclestone & Alberts, P.C.* (by *Wayne L. Ogne* and *Bryan Cermak),* for defendants.

Before: D. C. RILEY, P.J., and D. F. WALSH and WAHLS, JJ.

D. C. RILEY, P.J. These cases involve the scope of the doctrine of governmental immunity. Specifically, the issues here are whether the administration and supervision of a speech therapy program by a public school is a governmental function within the meaning of MCL 691.1407; MSA 3.996(107), and if so, whether the school principal, psychologist, and speech therapist who are directly responsible for the administration and supervision of that program are also insulated with the cloak of governmental immunity.

Plaintiffs' cause of action arises out of an alleged misdiagnosis of Maureen Brosnan's "language impairment". The facts of this case, as gleaned from

a reading of plaintiffs' complaint, are as follows. Prior to entering kindergarten in the Livonia public school system in September of 1977, Maureen was given a speech evaluation test by defendant Ken Thompson, who is a speech therapist for the defendant Livonia Board of Education. Thompson diagnosed Maureen as having a "delayed articulation" problem. Upon entering kindergarten, Maureen began receiving training and therapy associated with such a problem. This treatment lasted for nearly two years. During this period, however, Maureen was not suffering from a "delayed articulation" problem but rather from a "language impairment".

Maureen's parents, Bridget and Maurice Brosnan, individually, and Bridget, as next friend of Maureen, brought an action against the Livonia Public Schools, Livonia Board of Education, and Ken Thompson, as well as against the principal of Maureen's school, Venna Johnson, and the school psychologist, Charles Ruckhaber. Plaintiffs alleged, in part, that defendants failed to use reasonable care in maintaining diagnostic procedures and failed to properly diagnose Maureen's language impairment.

The trial court granted a motion for summary judgment pursuant to GCR 1963, 117.2(1), filed by two of the defendants, the Livonia Public Schools and the Livonia Board of Education, holding that they were immune from tort liability pursuant to the doctrine of governmental immunity. Plaintiffs appeal as of right in docket number 60170. The trial court also denied a motion for summary judgment filed by the three remaining individual defendants which was also brought under rule 117.2(1). The court's denial was premised on the ground that they were not entitled to governmen-

tal immunity as the activity in question did not go to the "traditional activities of running a school system and is not necessarily of the essence of running the school system". On April 29, 1982, this Court granted the individual defendants' application for leave to appeal in docket number 61739. These two appeals were subsequently consolidated.

A motion for summary judgment pursuant to GCR 1963, 117.2(1), failure to state a claim upon which relief can be granted, tests the legal sufficiency of a plaintiff's claim. It is the duty of the reviewing court to accept as true all well-pled facts in the complaint and to determine whether these claims are so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. *Duhame v Kaiser Engineering of Michigan, Inc,* 102 Mich App 68, 71; 300 NW2d 737 (1980), *lv den* 411 Mich 955 (1981).

The precise question in this case is one of first impression. Several recent decisions of this Court have held that the operation of a public school is a governmental function. *Bozarth v Harper Creek Bd of Ed,* 94 Mich App 351; 288 NW2d 424 (1979) (screening, hiring, and supervision of school teachers); *Deaner v Utica Community School Dist,* 99 Mich App 103; 297 NW2d 625 (1980) (conducting a combative sports physical education course); *Churilla v East Detroit School Dist,* 105 Mich App 32; 306 NW2d 381 (1981) (administration and supervision of a junior high school football program); *Smith v Mimnaugh,* 105 Mich App 209; 306 NW2d 454 (1981) (failure to provide sufficient crossing guards or overhead crosswalk in front of an elementary school); *Everhart v Roseville Community Schools,* 108 Mich App 218; 310 NW2d 338 (1981) (operation of an elementary school playground);

*Gaston v Becker,* 111 Mich App 692; 314 NW2d 728 (1981) (hiring and supervising of public school teachers); *Weaver v Duff Norton Co,* 115 Mich App 286; 320 NW2d 248 (1982) (operation of a building trades class pursuant to a vocational education program); *Regulski v Murphy,* 119 Mich App 418; 326 NW2d 528 (1982) (construction of a home pursuant to a building trades class). However, no case has considered the question of whether a public school district's administration and supervision of a speech therapy program is a governmental function.

MCL 691.1407; MSA 3.996(107) provides in part:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function."

The task of determining whether a particular activity of government is a "governmental function" within the meaning of the quoted statute has proven to be a continuing source of difficulty for both bench and bar of this state. However, recent decisions of this Court have consistently begun their analysis of this question with a review of the Supreme Court's holdings in *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), and *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978). In *Parker,* the Court held that the operation of a public governmental hospital is not a governmental function, while in *Perry,* the Court held that the operation of a state mental hospital is. While these two decisions might appear at first glance to be inconsistent, a closer examination reveals that the Supreme Court has developed three separate classification schemes or tests for determining whether a particular activity

is a governmental function. In reviewing claims of governmental immunity, the Court has consistently adhered to these tests. Although the unfortunate passing of Justice MOODY and the recent changes in the membership of the Supreme Court cast some doubt on the continued validity of *Parker, supra,* and *Perry, supra,* our holding today is governed by the rationale of these decisions.

Former Justice FITZGERALD and Justices KAVANAGH and LEVIN defined the term "governmental function" to include only those activities *"sui generis* governmental—of essence to governing". Under this *"sui generis"* test, the scope of governmental immunity is limited to those activities which are of such a "peculiar nature" that they could only be done by government.

The proponents of the *"sui generis"* test specifically rejected the "common good of all" test favored by former Chief Justice COLEMAN and Justices RYAN and WILLIAMS.

In casting the crucial "swing vote" in both *Parker, supra,* and *Perry, supra,* the late Justice MOODY utilized a slightly different approach to the *"sui generis"* test, suggesting:

"[A]s a basic guideline, the crux of the governmental essence test should be founded upon the inquiry whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government. Unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune." *Parker, supra,* p 200.

Justice MOODY also rejected the FITZGERALD bloc's conclusion, as stated in its dissenting opin-

ions in *Thomas v Dep't of State Highways,* 398
Mich 1; 247 NW2d 530 (1976), that a function is
not governmental unless the particular activity
involved has "no common analogy in the private
sector".

As Justice MOODY's analysis suggests that an
essential government activity may have a common
analogy in the private sector, his interpretation of
the *"sui generis"* test clearly extends immunity to
a broader range of government activities than
would the FITZGERALD bloc. See Littlejohn & De-
Mars, *Governmental Immunity After Parker and
Perry: The King Can Do Some Wrong,* 1982 DC L
Rev 1, 17.

Moreover, it is of singular importance to the
case at bar that Justice MOODY's holding in *Perry,
supra, i.e.,* that the operation of a state mental
hospital is a governmental function, was based, at
least in part, upon the fact that the government
played a pervasive role in the area of mental
health and that the Legislature had expressed a
public policy in favor of fostering treatment and
care for the mentally handicapped.

In determining whether a particular governmen-
tal activity is a governmental function, this Court
looks to the precise activity giving rise to the
plaintiff's claim (here, the misdiagnosis of a lan-
guage impairment and negligent administration of
speech therapy) rather than the overall or princi-
pal department operations (here, the operation of
an elementary school). *Galli v Kirkeby,* 398 Mich
527, 536; 248 NW2d 149 (1976); *Weaver v Duff
Norton Co, supra.*

Assuming, without deciding, that the private
sector is capable of administering speech tests and
speech therapy to all of the elementary school
students in the state who suffer from various

speech impediments, it is still clear that a majority of the Justices who voted in *Parker, supra,* and *Perry, supra,* would hold that the defendants in this case were involved in a governmental function.

In *Parker, supra,* p 204, Justices RYAN, WILLIAMS, and COLEMAN held that the operation of a municipally owned general hospital was a governmental function, stating:

"Manifestly, the examination, diagnosis and treatment of patients at a public hospital are activities intending to promote the general public health and are exercised for 'the common good of all'."

See, also, *Perry, supra,* p 213.

Similarly, in the case at bar, it must be said that the examination, diagnosis, and treatment of students at a public elementary school are activities intended to promote the general public health and are exercised for "the common good of all". These three Justices, therefore, would hold that defendants are immune from liability for their negligence, if any, in performing that function in the case at bar.

Moreover, we are persuaded that under Justice MOODY's version of the *"sui generis"* test, the defendants' complained-of activity in the case at bar was a governmental function. Significant to our conclusion in this regard is the fact that MCL 380.1751; MSA 15.41751 provides that a school district must provide special education programs and services for handicapped persons in its district. MCL 380.4; MSA 15.4004 defines "handicaps" to include mental, physical, emotional, behavioral, sensory, and *speech* handicaps. Further, the defendants' participation in the speech program was consistent with our constitutionally mandated pub-

lic policy in favor of services for handicapped persons. Const 1963, art 8, § 8. Finally, it must be noted that the government plays a pervasive role in the area of public education and that the number of private schools available to deal with the educational needs of the public is inadequate. See *Bokano v Wayne-Westland Community Schools,* 114 Mich App 79; 318 NW2d 613 (1982).

Thus, we conclude that the defendants Livonia Board of Education and Livonia Public Schools were engaged in a governmental function and, therefore, the trial court was correct in granting their motion for summary judgment.

A question remains, however, as to whether the trial court erred in denying the individual defendants' motion for summary judgment. There is a split of authority within the Court as to the proper analysis to employ for determining whether public employees are protected by governmental immunity. One school of thought focuses on whether the employee was carrying out a discretionary or ministerial act. Under this approach, a public employee is only immune from tort liability for those acts which are discretionary in nature. *O'Toole v Fortino,* 97 Mich App 797, 811; 295 NW2d 867 (1980). On the other hand, other panels of this Court have adhered to a test where the question is merely whether the public employees were acting within the scope of their employment. If so, they cannot be held liable. *Gaston v Becker, supra.*

We find it unnecessary to decide to which school of thought we will subscribe as it is clear that under either approach the individual defendants were entitled to the defense of governmental immunity.

As discussed above, the operation of a speech therapy program in a public school is a govern-

mental function. It is undisputed that the individual defendants were acting within the scope of their employment during the period when the alleged acts of negligence occurred and, thus, under *Gaston, supra,* they were entitled to governmental immunity.

The individual defendants would also prevail under the discretionary-ministerial test as authorized in *O'Toole, supra,* as the acts involved were surely discretionary. The administration and supervision of a speech therapy program necessarily involves the exercise of subjective judgment based on the individual's special training, knowledge, and skills. See *Cook v Bennett,* 94 Mich App 93, 100; 288 NW2d 609 (1979).

Thus, we conclude that the trial court erred in denying the individual defendants' motion for summary judgment.

Affirmed in part; reversed in part; and remanded for proceedings not inconsistent with this opinion. No costs, a public issue being involved.