CHURCHWELL v REGENTS OF THE UNIVERSITY OF MICHIGAN

Docket No. 78-4059. Submitted November 8, 1979, at Lansing.—Decided May 19, 1980. Leave to appeal applied for.

Katherine Churchwell, hereinafter plaintiff, brought suit against the Board of Regents of the University of Michigan, hereinafter defendant, for alleged negligent treatment at the University of Michigan Hospital. The Court of Claims, Ronald M. Ryan, J., granted defendant summary judgment based on the governmental immunity doctrine. Plaintiff appeals. *Held:*

1. The governing test for determining whether governmental immunity will shield a state agency from tort liability is whether the purpose, planning, and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government.

2. The purpose, planning, and carrying out of the day-to-day operation of a hospital such as the University of Michigan Hospital can be accomplished by other sources than the government.

3. The Court of Appeals will look to the precise governmental operation sought to be immune rather than the overall or principal departmental operation in determining whether governmental immunity will shield a state agency from tort liability.

Reversed and remanded.

1. GOVERNMENTAL IMMUNITY — STATE AGENCIES — STANDARDS.

The governing test for determining whether governmental immunity will shield a state agency from tort liability is whether the purpose, planning, and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 72 Am Jur 2d, States, Territories, and Dependencies § 99 *et seq.*
    State's immunity from tort liability as dependent on governmental or proprietary nature of function. 40 ALR2d 927.
[2] 40 Am Jur 2d, Hospitals and Asylums § 2.

2. GOVERNMENTAL IMMUNITY — HOSPITALS — STATE HOSPITALS.

The purpose, planning, and carrying out of the day-to-day operation of a hospital such as the University of Michigan Hospital can be accomplished by sources other than the government.

3. GOVERNMENTAL IMMUNITY — TORTS — HOSPITAL OPERATIONS.

The Court of Appeals will look to the precise governmental operation sought to be immune rather than the overall, or principal departmental operation of a state agency in determining whether governmental immunity will shield the state agency from tort liability.

*White, Spaniola, Knudsen, Stariha & Potuznik, P.C. (by Randall D. Fielstra), for plaintiff.*

*Dice, Sweeney, Sullivan & Feikens, P.C. (by David R. Getto), for defendant.*

Before: R. M. MAHER, P.J., and ALLEN and J. H. PIERCEY,* JJ.

J. H. PIERCEY, J. This cause represents an appeal from a summary judgment entered in the defendant's behalf in the Court of Claims. Said judgment was entered on the ground that the plaintiff had failed to state a claim in avoidance of the governmental immunity statute. MCL 691.1407; MSA 3.996(107). GCR 1963, 117.2(1).

Plaintiff's initial complaint alleged that she sustained injuries through the negligent treatment she received from the agents and employees of the defendant at the University of Michigan Hospital. Defendant responded with a motion for summary judgment on governmental immunity grounds. Plaintiff was granted leave to amend her complaint to allege that the University of Michigan Hospital was engaged in a proprietary function. This served to no avail, however, as the trial court filed written findings concluding that the plaintiff

---

* Circuit judge, sitting on the Court of Appeals by assignment.

had failed to state a claim in avoidance of governmental immunity, either by pleading that the operation of University Hospital was a proprietary function, or by pleading that the hospital was not a governmental function.

After an evidentiary hearing was held and testimony was taken on the organizational purposes of the hospital, its financial support, and its various functions, including health care, research, and education of medical students and residents, the trial court granted defendant's summary judgment motion incorporating the written findings it had previously filed. From this adverse determination, plaintiff appeals as of right.

The sole question raised in this appeal is whether the Board of Regents of the University of Michigan are engaging in the exercise or discharge of a governmental function in their operation of the University of Michigan Hospital, thus entitling them to immunity from tort liability under MCL 691.1407; MSA 3.996(107).

MCL 691.1407; MSA 3.996(107) provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

The statutory term "governmental function" has been subjected to varied interpretations by members of the Supreme Court as of late. Justices RYAN, COLEMAN, and WILLIAMS are of the opinion that the Legislature, by employing such a common law term of art in creating statutory immunity,

has directed the courts to look to the common law for guidance in determining whether, in any given case, a governmental agency may invoke the protection of the statute. Also, case law before the adoption of this statute held that the operation of a public hospital to promote the public health is a governmental function. See *Perry v Kalamazoo State Hospital,* 404 Mich 205, 211; 273 NW2d 421 (1978).

Justices KAVANAGH, LEVEN and FITZGERALD reject this strict reliance on prior case precedent, opinion that the evolution of case precedent is exclusively committed to the judicial branch of government. As an alternative to following common law precedent, then, these Justices suggest that the term "governmental function" be limited to those activities *sui generis* governmental—of essence to governing. See *Parker v Highland Park,* 404 Mich 183, 193-194; 273 NW2d 413 (1978). In applying this test in *Parker,* these Justices concluded that the daily operations of a hospital do not constitute a governmental function. *Parker, supra,* 194.

From this discussion, it can be seen that the Court was split on this issue in both *Parker* and *Perry.* As a result, the critical analysis in each case was supplied by Justice MOODY. Justice MOODY agreed with Justices KAVANAGH, LEVIN, and FITZGERALD in their conclusion that the Court is not statutorily bound to its common law precedent, due to the statutory use of the term "governmental function". Justice MOODY, however, declined to follow the planning/operations distinction that Justices FITZGERALD, KAVANAGH, and LEVIN proposed as a means of applying the "essence of governing test" in *Thomas v Department of State Highways,* 398 Mich 1, 21; 247 NW2d 530 (1976).

Instead, Justice MOODY stated the crux of the governmental essence test to be upon:

"* * * whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government. Unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune." *Parker, supra,* 200.

Justice MOODY's recommended analysis. has emerged as the decisive one at this particular stage in the development of the immunity doctrine in that, as can be seen, he has the "swing vote" on questions of the application of governmental immunity. In *Parker,* Justice MOODY applied his swing vote to the KAVANAGH-FITZGERALD-LEVIN bloc in holding that the day to day operations of a municipal general hospital were not unique to government, nor pursuant to a governmental mandate, and, as a result, not shielded from liability. *Parker, supra,* 201-202.

In *Perry,* on the other hand, Justice MOODY sided with the RYAN-COLEMAN-WILLIAMS bloc, upholding the immunity of a state mental hospital. The different result for public mental hospitals and public general hospitals was based on the state's substantial appropriations for mental health, the legislatively declared policy that services for the seriously mentally handicapped be fostered and provided, and the necessity of public mental facilities for the civil and criminal disposition of the mentally diseased by the courts. Justice MOODY noted that private mental health facilities existed, but since their numbers were inadequate to deal with the substantial institutional needs of

the public, public mental facilities were held to perform an essentially unique activity mandated by legislative action. *Perry, supra,* 213-215.

As the foregoing indicates, our task in the instant situation is to apply Justice MOODY's recommended analysis to the facts at hand. This follows, in that it is clear that the RYAN-COLEMAN-WILLIAMS bloc would uphold the trial court under their common law approach. See *Robinson v Washtenaw Circuit Judge,* 228 Mich 225; 199 NW 618 (1924). Conversely, the KAVANAGH-FITZGERALD-LEVIN approach would require reversal consistent with their conclusions in *Parker* and *Thomas, supra.* Thus, Justice MOODY's "swing vote" would again represent the deciding factor.

The issue can be restated then. Applying Justice MOODY's test, it becomes whether the purpose, planning, and carrying out of the activity, *i.e.,* the operation of the University of Michigan Hospital, due to its unique character or governmental mandate, can be effectively accomplished only by the government. At first blush, it appears that this issue was asked and answered in *Parker, supra,* with the defendant therein held subject to tort liability.

The instant defendant challenges the application of *Parker* to the case at bar on two fronts, however. First, he asserts that the trial court dismissed this case on the basis of governmental immunity prior to the date the *Parker* decision became effective, and that *Parker* should only be applied prospectively. We find this argument unpersuasive in light of this Court's decision in *Berkowski v Hall,* 91 Mich App 1, 6; 282 NW2d 813 (1979). Second, defendant seeks to distinguish *Parker* by emphasizing that the University of Michigan Hospital is a teaching hospital in that it acts in conjunction

with a legislatively mandated medical school. Therefore, defendant argues, since the training of physicians in Michigan is effectively accomplished only by government, with no analogue in the private sector, and since the operation of University Hospital is inextricably intertwined with the operation of this medical school, University Hospital operations do constitute a governmental function.

We disagree. We do not find that the purpose, planning, and carrying out of the day to day operation of the University Hospital can be effectively accomplished only by the government. We recognize that, from an economic standpoint, perhaps, the operation of a medical school can only be so effectuated. This, in itself, is controvertible, however, when one considers that private institutions for the training of other health care professionals, such as dentists and nurses, do exist in the state. In any event, in applying the definition of governmental function, we must focus on the precise operation sought to be held immune rather than overall or principal departmental operations. See *Berkowski v Hall, supra,* 7. In so doing, we find this case to be ruled by the *Parker* decision. The operation of a university hospital is more like the operation of a general hospital than a mental hospital. According to *Parker,* and consistent with *Perry,* therefore, the operation is not protected by the cloak of governmental immunity.

Reversed and remanded for a trial on the merits.